UNITED STATES *v.* AMERICAN EXPRESS CO. (No. 1552).[1]

1. "FRAISES"—SUGAR-MANUFACTURING MACHINERY FREE.
    "Fraises"—the abrading parts of machines which sharpen the knives of beet-cutting machines—being shown to be indispensable to the operation of the sharpening machines and used exclusively for that purpose, the cutting machines being shown to be indispensable to the operation of a beet-sugar factory, are entitled to free entry under paragraph 391, tariff act of 1913, as "machinery for use in the manufacture of sugar * * * and all other agricultural implements of any kind and description, whether specially mentioned herein or not, whether in whole or in parts, including repair parts."

2. CONSTRUCTION.
    The phrase "whether in whole or in parts" relates not only to "all other agricultural implements" but also to the articles, appliances, or machines antecedently enumerated.

[1] Reported in T. D. 36124 (30 Treas. Dec., 161).

## United States Court of Customs Appeals, January 22, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7687 (T. D. 35141).
[Affirmed.]

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

*McLaughlin, Russell, Coe & Sprague* and *Sharretts, Coe & Hillis* (*Thaddeus S. Sharretts* and *Edward P. Sharretts* on the brief) for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Goods known as "fraises," imported at the port of New York, were classified by the collector of customs as manufactures of metal not specially provided for and assessed for duty at 20 per cent ad valorem under paragraph 167 of the tariff act of 1913, which paragraph, in so far as pertinent to the case, reads as follows:

167. Articles or wares not specially provided for in this section; * * * if composed wholly or in chief value of iron, steel, * * * or other metal, but not plated with gold or silver, and whether partly or wholly manufactured, 20 per centum ad valorem.

The importers protested that the goods were parts of beet-sugar machines and therefore free of duty under paragraph 391 of the tariff act of October 3, 1913, which paragraph reads as follows:

(Free list.) 391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts.

The Board of General Appraisers sustained the protest and the Government appealed.

As appears from the sample in evidence and the record in the case, the fraises have a flat, ring-shaped, steel filing surface, beveled on the outer edge and fitted to a metal disk with a hole in the center by means of which the implement is adjusted to a shaft for service. The fraises are used for sharpening so-called beet knives, which have a fluted blade and a series of connected V-shaped cutting edges. The edges of the flutings, which also serve the purpose of cutting edges, are parallel to one another and perpendicular to the V-shaped cutting edges. The knives are employed to cut beets to a form and size which will facilitate the extraction of the juices from which beet sugar is made. Before cutting, the beets are washed, but it appears that some grit, dirt, and stone still adhere to them when they are brought under the knives, in consequence of which all the cutting edges of the knives are very quickly dulled and not infrequently broken. So great, indeed, is the wear on the knives that from 1,500 to 2,000 of them must be removed daily from

the cutting machine and sharpened in order to render them fit for further use. The record discloses that for the sharpening of the knives every beet-sugar plant is equipped with a fraising machine, and each fraising machine is supplied with an abrading appliance, called a fraise, which does the sharpening and which is an essential part of the sharpening mechanism. According to the evidence, fraising machines have no known use except that of sharpening sugar-beet knives, and for a period of at least 23 years they have been regarded as a necessary part of the mechanical equipment of beet-sugar factories.

On this state of facts the Government contends, first, that the goods are files, and that as files are provided for *eo nomine* in paragraph 131 of the tariff act, preference must be given to that designation rather than to their enumeration in paragraph 391 as parts of machinery for use in the manufacture of sugar; second, that as the knife-sharpening machines never come in contact with the beets from which the sugar is made and have no direct intervention in the making of sugar, such machines can not be classified as "machinery for use in the manufacture of sugar"; third, that parts of sugar-manufacturing machinery are not provided for in paragraph 391, and that therefore fraises, which are nothing more than parts of the fraising machine, can not be classified under that paragraph, even if such machines came within the definition of machinery used for the manufacture of sugar.

In answer to the first point it is sufficient to say that the goods under consideration are something more than files. They are files mounted on a metal disk and constitute in truth and in fact an essential part of a particular, specific kind of metal-abrading machine. The fraises are in fact constituent elements of a filing or routing machine. Regarded, however, as separate entities, distinct from the machine of which they were designed to form a part, it is evident that they do not fall within the common understanding of "files," and that for any practical purpose they could not be efficiently used as files. We are therefore of opinion that the importation is not dutiable under paragraph 131, as claimed by the Government.

The second contention of the appellant reduces itself to the proposition that only such machinery can be classified as machinery for the manufacture of sugar as is actually employed in one or other of the processes required for the making of sugar, and that machines exclusively or chiefly used to make such machinery serviceable do not fall within that category. We do not think that that interpretation can be sustained, inasmuch as it would exclude from the operation of the provision under consideration all auxiliary machines not only chiefly but exclusively used in the manufacture of sugar and just as essential to such manufacture as the machinery required

for the processing of the raw material out of which the sugar is made. If machinery which intervenes directly in the development of the finished product is machinery for use in the manufacture of sugar, then, in our opinion, machines which are necessarily and exclusively or chiefly used to make the operation of such machines commercially practical, efficient, and economical, must likewise be so regarded. To hold otherwise would result in an anomaly which we do not believe it was the intention of Congress to perpetrate. In our opinion the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories. That is to say, any machine constituting a necessary and essential part of the equipment of sugar factories and which is exclusively or chiefly used by them comes within the designation of "machinery for use in the manufacture of sugar." Beet-knife sharpeners, as disclosed by the record, are just as indispensable to a beet-sugar factory as are beet-cutting machines. They constitute a necessary part of the factory equipment and are not only chiefly used, but apparently exclusively used, by such factories. They are, therefore, we think, entitled to free entry.

We now come to the consideration of whether parts of machinery for use in the manufacture of sugar are provided for in paragraph 391 and to the discussion of the third point made by the Government. The Government argues that the phrase in paragraph 391 "whether in whole or in parts" relates to "all other agricultural implements" and to none of the articles, appliances, or machines antecedently enumerated. We do not think that this construction of the paragraph can be successfully maintained. Had the particular provision under discussion read "all other agricultural implements, whether in whole or in parts," there might be some ground for the contention made by the Government. The reading of the paragraph, however, is "all other agricultural implements of any kind or description, whether specifically mentioned herein or not," and that language makes it clear that the phrase "whether in whole or in parts" relates not only to agricultural implements which are not specifically designated in the paragraph, but also to those which are so designated. Whether machinery for use in the manufacture of sugar comes within the meaning popularly attributed to the term "agricultural implements" it is unnecessary to decide, inasmuch as Congress has seen fit to enumerate such machinery as agricultural implements. Machinery for use in the manufacture of sugar being enumerated as agricultural implements, we must hold that the phrase "whether in whole or in parts" refers to such machinery as one of the agricultural implements *mentioned* in the paragraph.

Inasmuch as we have decided that fraising machines for the sharpening of beet knives are machinery for use in the manufacture of sugar, and as fraises are admittedly parts of such machines, it follows that the fraises imported are provided for in paragraph 391, and consequently should have been admitted free of duty.

The decision of the Board of General Appraisers is therefore *affirmed*.