(C. D. 570)

SOUTH COAST CORP. v. UNITED STATES

United States Customs Court, Second Division

(Decided December 12, 1941)

*Philip Stein* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Daniel G. McGrath* and *Joseph J. Brady*, special attorneys), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of New Orleans, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation described in the entry as "1 case connecting rod. 100# (sugar mill machinery)." Duty was levied thereon at the rate of 15 per centum ad valorem under the specific provision in paragraph 372 of the Tariff Act of 1930 for reciprocating steam engines and parts thereof. It is claimed that said merchandise is properly entitled to free entry under the provision in paragraph 1604 of said act for machinery and parts thereof for use in the manufacture of sugar.

At the hearing, held at New Orleans on May 8, 1940, before Cline, Judge, the plaintiff offered in evidence the testimony of Will J. Gibbens, Jr., a sugar engineer and machinery dealer for the past 21 years. He testified that he was thoroughly familiar with all kinds of machinery used by sugar mills in Louisiana and Florida, having

visited every sugar-cane factory in those states a number of times; that the particular articles constituting the imported merchandise at bar are necessary parts of a steam engine which drives by means of direct connection a set of revolving cane knives which chop up the sugar cane prior to its entry into the factory; and that steam engines are in very common use in cutting sugar cane.

The witness then proceeded to testify in part as follows:

Q. Would you say then that the steam engine is an essential operating part of this type, the type upon which it is used in this case, of sugar mill machinery?—A. Not essentially, because electric motors could be used in place of steam engines, but the particular application of this steam engine is due to its ability to run at a speed of 500 revolutions a minute or more, and as far as I know, there are no engines of American manufacture capable of running that fast.

＊　　　　＊　　　　＊　　.　＊　　　　＊　　　　＊　　　　＊

Q * * *. Now, this then, this rod is used in a steam engine which is essential to the operation of the machinery where there is no electric motor, is that correct? —A. No, that is not correct. It is essential to the machinery provided that machine is directly driven instead of being driven by means of belts, ropes or other speed increasing——

Q. The machine in which it is used—this connecting rod—is for sugar mill process, isn't it?—A. Yes.

＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊

Q. Now would you say that the machine in which the connecting rod in question is used is used more than any other type for that work?—A. No, because there are less of them in number than other types of machines.

＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊

Q. And would you say that the machine in which this connecting rod is used is not used for any other purpose but in this sugar mill machinery?—A. Yes.

On cross-examination the witness testified in part as follows:

X Q. This connecting rod is used in a reciprocating steam engine, is it not?— A. Yes, sir.

X Q. And it is an essential part for the successful operating of a reciprocating steam engine, isn't it?—A. Yes.

X Q. If you had no connecting rods your steam engine wouldn't function?—A. Yes.

＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊

X Q. * * * Reciprocating steam engines are used in many industries, are they not, other than the sugar industry?—A. Yes.

X Q. There is nothing about a reciprocating steam engine that dedicates it solely for use in connection with a cutting machine in the sugar business, is there?— A. No, except this particular make of steam engines, which possess the qualities of running at particularly high speeds, and for that reason they have been used, as far as I know, only for direct connection to cane knives.

＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊　　　　＊

X Q. Have you seen the vertical type enclosed reciprocating steam engine in use throughout the United States in other than the sugar industry?—A. Yes.

X Q And that last type is the same type as is involved in this instant case, is it not? * * *—A. It is the same type, but not capable of developing as high a speed.

On redirect examination the witness testified in part as follows:

R. Q. Is it a fact, according to your knowledge, that there are no vertical enclosed type engines identical with that involved in this case in which the connecting

rod is used, * * *, that there are no such engines used for any other purpose except in the sugar making machinery?—A. As far as I know, there are none, and the reason for that is that the engines manufactured in Scotland of this particular type make are much more expensive than the domestic engines; their construction is different; and for that reason they have not been able to compete with domestic manufacturers here, in the markets in which reciprocating engines are used in other industries, but because high speed is an essential to the specific purpose of direct connection to the revolving cane knives the purchasers desiring that type of drive have had to go abroad and pay a premium for an engine capable of doing what, as far as they were able to find out, could not be done by any domestic manufacturer.

While the record shows that the connecting rods constituting the imported merchandise at bar are integral and essential parts of vertical reciprocating steam engines used in sugar factories to drive cane-cutting knives, nevertheless they are excluded from paragraph 1604 of the Tariff Act of 1930 by virtue of the proviso therein contained. Reciprocating steam engines are *eo nomine* provided for in paragraph 372 of said act.

In fact, this precise question has already been decided adversely to the contention of the importer in the case of *Enrique Abarca and U. Casal and Rubert Hermanos* v. *United States*, 18 C. C. P. A. 370, T. D. 44617. There, the question at issue was the tariff classification of certain reciprocating steam engines expressly imported for use in a sugar factory in driving a set of cane knives. Duty was levied thereon at the rate of 15 per centum ad valorem under the provision in paragraph 372 of the Tariff Act of 1922 for steam engines. There, as here, it was claimed that the merchandise was properly entitled to free entry under paragraph 1504 of said act as machinery for use in the manufacture of sugar. The appellate court said:

The witness called was a salesman of machinery used in the manufacture of raw sugar. * * *

His testimony established the fact that the articles in question are steam engines. It is true that they were probably specially designed for use in sugar mills and that they might have to undergo some modifications to fit them for use in other industries, but the fact remains that they are steam engines. "The cranks and cylinders comprise standard steam engine parts."

The Customs Court said (Abstract 10068):

It is not disputed that the article in question is a steam engine, plaintiffs' witness describing it as "a double-crank-high-speed noncompound steam engine." Hence, while it may be part of the machinery used in a sugar manufacturing plant, being *eo nomine* provided for in the tariff act, it is expressly excluded from classification under said paragraph 1504 by virtue of the following proviso thereto:

*Provided*, That no article specified by name in Title I shall be admitted free of duty under this paragraph.

That the article involved herein is a certain type of steam engine does not affect its classification as such. The provision in paragraph 372 is for steam engines and is not restricted to any particular kind of steam engine.

We find no error in the Customs Court's decision. The several cases cited in appellants' brief (there being no oral argument for appellants before us) have been examined and carefully considered. None seems to be sufficiently analogous

to the present case, either in the merchandise involved or in the reasoning followed, to sustain appellants' contentions here made.

In *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T. D. 36124, "Fraises," which are abrading parts of mechanisms used exclusively in sharpening the knives of beet-cutting machines, were held classifiable as "machinery for use in the manufacture of sugar."

The merchandise, consisting of certain plates and blades, involved in another *United States* v. *American Express Co.* case, 12 Ct. Cust. Appls. 483, T. D. 40693, were found by the court to be articles "used *exclusively* as parts of sugar-making machinery." [Italics ours.]

It seems obvious to us that these cases do not present controlling, or even persuasive, precedents to govern the instant case. The other cited cases appear equally inapplicable, and their review is deemed unnecessary.

Steam engines are specified by name in Title I (the dutiable list) of the act, and the proviso to paragraph 1504, quoted, *supra*, in the excerpt from the Customs Court's opinion, expressly forbids their being classified under said paragraph, unless we could say that being steam engines of a special type renders them, for tariff purposes, not steam engines but something else. Such a holding would be extremely fantastic under the statute as worded.

In a more recent case, *Central Aguirre Sugar Co.* v. *United States*, Abstract 24190, 63 Treas. Dec. 1542, this court had before it certain parts of steam-driven plowing mechanisms used exclusively on sugar plantations in Porto Rico. Duty was levied on the steam engine parts at the rate of 15 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of steam engines; and on the remaining parts at the rate of 45 per centum ad valorem under paragraph 397 of said act as articles in chief value of base metal not specially provided for and not plated with platinum, gold, or silver, or colored with gold lacquer. It was claimed that all of said articles were properly entitled to free entry under paragraph 1604 of said act as agricultural implements or parts thereof.

The court held that all of the engine parts were properly dutiable at the rate of 15 per centum ad valorem under said paragraph 372 as parts of reciprocating steam engines; and that all parts of the plow mechanisms were entitled to free entry under said paragraph 1604 as parts of agricultural implements. In our decision we said:

\* \* \* Ordinarily, the reciprocating steam engine and the imported spare and replacement parts thereof, by reason of their exclusive use in connection with Fowler steam plows in agricultural operations, would be entitled to free entry as parts of agricultural implements, were it not for the fact that they are *eo nomine* mentioned in said paragraph 372. That circumstance brings into operation the express declaration in the proviso to paragraph 1604 "that no article specified by name in Title I shall be free of duty under this paragraph." Hence, that language precludes these engine parts from being accorded free entry under paragraph 1604.

See also *Central Aguirre Sugar Co.* v. *United States* (T. D. 47611, 67 Treas. Dec. 515).

Upon all the facts and the law applicable thereto we hold the connecting rods constituting the imported merchandise at bar to be

properly dutiable at the rate of 15 per centum ad valorem under paragraph 372 of the Tariff Act of 1930 as parts of reciprocating steam engines, as classified by the collector. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.