(C. D. 1450)

Savannah Sugar Refining Corp.
Hensel Bruckman & Lorbacher, Inc. } *v.* United States

United States Customs Court, Second Division

(Decided July 23, 1952)

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the plaintiffs.
*Charles J. Wagner*, Acting Assistant Attorney General (*William J. Vitale* and *Richard H. Welsh*, special attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:  An automatic machine designed for weighing raw sugar and known as a Servo duplex weigher or Servo balans was classified by the collector of customs as a machine, not specially provided for, pursuant to the terms of paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, and duty was assessed thereon at the rate of 15 per centum ad valorem.

Plaintiffs claim that the device in controversy is entitled to entry free of duty as provided in paragraph 1604 of said act (19 U. S. C. § 1201, par. 1604) which among other articles enumerates "machinery for use in the manufacture of sugar."

Plaintiffs introduced the testimony of two witnesses; the defendant called none.  The first witness, Frank M. Exley, general superintendent of the Savannah Sugar Refining Corp. and a graduate of the Georgia School of Technology in 1924 with a degree of bachelor of science in civil engineering, testified that after 3 years of diversified engineering experience, he became associated with the Savannah Sugar Refining Corp. with which he has been continuously employed, except for two brief periods, as a draftsman in the chemical laboratory, and in the plant operations as assistant superintendent and general superintendent.

Exley further testified that said corporation buys raw sugars, refines them, and sells granulated sugars of various types as well as molasses and bagasse byproducts.  He described in detail the process employed at his refinery from the time of unloading the raw sugar and its storage until it is needed in the refinery; that when raw sugar is transferred from storage to the refinery, it is blended with certain sirups and is scrubbed which removes the molasses from around the crystal; it is then washed with hot water until it is liquefied, and the insoluble matter is removed; the product is then decolorized and the mineral matter eliminated so far as possible, followed by crystallization and removal of additional mineral matter.  The white sugar crystals are then washed with hot water and steamed, dried, screened, and packed, after weighing.  The witness explained that the extraction of pure raw sucrose must be carefully controlled to prevent loss

through waste, leakage, or destruction by heat; that a refinery must recover more than 99 per centum of the sucrose in order to remain in business; that the amount of raw material entering the refining and manufacturing process is measured by accurately weighing and metering by use of a Servo balans, which is the machine in controversy.

The witness stated that this machine weighs the net amount of the raw sugar entering the refinery and shows the total quantity of material that has been weighed and discharged for processing, thereby furnishing the data necessary to determine the efficiency of the process and the man-hours required to produce the finished product; that the totals shown by this machine are recorded by each shift superintendent so that he knows how well his shift has performed its work. The witness produced three photographs received in evidence as collective exhibit 1 to illustrate the installation of this machine. The photograph marked 1–A illustrates the recording and indicating mechanism. The one marked 1–B shows its general arrangement in the line of processing through the plant, and the photograph marked 1–C depicts the location of the machine in the refinery.

Exley also testified that this weighing machine was made according to specifications prepared by a Mr. Frank M. Chapman (also called as a witness), a consulting engineer; that he knows of no other use of the machine than as above-described; that the machine has special features required for use in a sugar refinery which he explained in some detail, with the result that the machine supplies a continuous total of the net weight of the material entering the refinery for processing.

It is clear from the testimony of this witness that the machine is specially designed and constructed to function smoothly with a sticky product and can weigh 3,000 pounds of raw sugar per minute.

The second witness, Frank M. Chapman, testified that he is a consulting sugar technologist employed by Tate & Lyle, Ltd., of London and is "on loan" to the Savannah Sugar Refining Corp. as general consultant. It appears from the record that Tate & Lyle, Ltd., is the largest sugar refiner in the world and performs more experimental work in sugar refining equipment than any other refining group in the world. Chapman is an associate fellow of the Royal Technical College in Glasgow, having received his degree in 1921. From 1921 to 1924, he was assistant chemist and junior process controller for a sugar refinery in Govan, Scotland; from 1924 to 1926, he performed a similar service in a raw sugar factory in Brazil; from 1926 to 1930, he was a chemist with the Colonial Sugar Refinery in Australia; from 1930 to 1931, he was assistant to the superintendent at the Spreckles Sugar Co., New York; for a short period he was a special investigator for the Atlantic Sugar Refineries at St. John, New Brunswick, and for 2 years he was chemist and

process controller for the Lincolnshire Sugar Co. in England; since 1933, he has been associated with Tate & Lyle, Ltd., first as process manager and later as general technologist.

For 3 years, Mr. Chapman has acted as consultant for the Savannah Sugar Refining Corp. devoting approximately 50 per centum of his time to its refinery on materials pertaining to sugar refining. He testified to his familiarity with the Servo duplex weigher in controversy which, he stated, was especially designed for its particular purpose. His expert knowledge was employed in the construction of the machine in Holland and he also participated in its installation at the refinery where he had seen it in operation. He explained that the machine meters the input of raw sugar with great accuracy and totalizes it mechanically and automatically. The machine is so scientifically constructed that it can be adapted to measure volumetrically a jar of sirup in correct proportion to the weight or volume of the amount of raw sugar introduced into the refinery.

Based upon his broad experience with sugar refinery operations in various parts of the world, and his study of the factors that determine efficiency, he pointed out that sugar refineries operate on small margins of profit and that a refinery cannot operate successfully if its efficiency is under 99 per centum; that a plant efficiency of 99.2 per centum may make some financial gain, but if it is 99.4 per centum efficient, the profits will be doubled. The witness explained that the input of raw sugar is the basis for all efficiency determinations and the input is determined by the Servo weigher with great accuracy. He also stated that he knew of no other use for the Servo weigher.

Upon the testimony of these highly qualified witnesses, which is not contradicted in any way, plaintiffs contend that since the only use of the machine is for weighing, metering, and recording the amount of raw sugar entering into a refinery for manufacture into sugar, the Servo weigher in controversy properly falls within the class of "machinery for use in the manufacture of sugar" as provided in paragraph 1604, *supra*. It is not disputed that the Servo weigher enables the refinery to determine the operating efficiency essential to the successful operation of a sugar refinery.

As indicative of the liberal treatment accorded to the provision for sugar refining machinery in the tariff act, plaintiffs invite our attention to the case of *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T. D. 36124, wherein it was held that certain devices known as fraises used to sharpen the knives of beet-cutting machines were held to be within the provision for machinery for the manufacture of sugar in paragraph 391 of the Tariff Act of 1913 which, in substance, is the same as paragraph 1604 of the Tariff Act of 1930. In its interpretation of the provision for machinery for use in the

manufacture of sugar, the appellate court made the following observation:

> * * * If machinery which intervenes directly in the development of the finished product is machinery for use in the manufacture of sugar, then, in our opinion, machines which are necessarily and exclusively or chiefly used to make the operation of such machines commercially practical, efficient, and economical, must likewise be so regarded. * * * *In our opinion the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories.* That is to say, any machine constituting a necessary and essential part of the equipment of sugar factories and which is exclusively or chiefly used by them comes within the designation of "machinery for use in the manufacture of sugar." * * * [Emphasis added.]

The following cases are also worthy of note: *Renfrew Machinery Co. (Ltd.)* v. *United States*, 42 Treas. Dec. 327, T. D. 39382, wherein so-called truck scales chiefly employed by farmers in connection with planting, harvesting, and marketing food crops were held to be properly classified as agricultural implements; and *Sears, Roebuck & Co.* v. *United States*, 71 Treas. Dec. 972, T. D. 49034 (affirmed on rehearing in Abstract 40791), wherein so-called farmer's scales, constructed and designed to measure animal feed chiefly used in the feeding of cattle, were likewise classified as agricultural implements.

Applying the doctrine enunciated by the court in the *American Express Co.* case, *supra*, that "* * * the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories," we are of the opinion, based upon the uncontroverted facts in the record before us, that the Servo duplex weigher in controversy is entitled to free entry as "machinery for use in the manufacture of sugar" as provided in said paragraph 1604.

That claim of plaintiffs is sustained and judgment will be entered accordingly.