JOHN S. JAMES a/c THE CONSOLIDATED PACKAGING CORP. *v.* UNITED STATES (No. 5060)[1]

United States Court of Customs and Patent Appeals, April 14, 1961

*Hitch, Miller and Beckmann* (*Robert M. Hitch,* of counsel) for appellants.
*George S. Leonard,* Acting Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Alfred A. Taylor, Jr.,* and *Richard H. Welsh,* trial attorneys, of counsel) for the United States.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

MARTIN, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, Abstract 64481,[3] overruling the importer's protest and sustaining the classification of a machine designed for packaging two-pound bags of sugar as an article having as an essential feature an electrical element or device under paragraph 353 of the Tariff Act of 1930. Appellants contend that the imported ma-

---

[1] C.A.D. 768.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

[3] This case was first tried in the Customs Court on March 7, 1958. Before the record of that trial could be transcribed, the court reporter died and it was impossible to transcribe his notes. On the basis of a stipulation between the parties, a judgment of the Customs Court adverse to appellants was handed down on September 16, 1959. *John S. James, a/c The Consolidated Packaging Corporation* v. *United States,* 43 Cust. Ct. 133, C.D. 2116. Appellants' motion for a retrial was granted, the case was retried, and a second judgment of the Customs Court, also adverse to appellants and from which this appeal is taken, was handed down on August 31, 1960.

chine should be classified as "machinery for use in the manufacture of sugar" under paragraph 1604 of the Act and hence free of duty.

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, so far as pertinent, reads:

> Articles having as an essential feature an electrical element or device, * * *, wholly or in chief value of metal, and not specially provided for
>
> *     *     *     *     *     *     *
>
> Other * * *_____ 13¾% ad val.

Paragraph 1604 of the Tariff Act of 1930, part of the free list, reads in pertinent part:

> Agricultural implements: * * * machinery for use in the manufacture of sugar, * * *.

It appears that the imported machine was custom-built solely for the sugar refining industry and is designed to meter 120 two-pound portions of sugar per minute, place each portion in a bag, close and seal the bag, and eject it from the machine. It further appears that in the sugar refining plant where the imported machine is installed and operating, refined "extra fine granulated sugar" of a "commercial grade" comes temporarily to rest in a storage bin after a series of manufacturing stages. Sugar is taken from this bin as needed, and in one subsequent plant operation, sugar moves directly from the bin to the machine at issue here.

The sole question before this court is whether the imported machine is "machinery for use in the manufacture of sugar" as that phrase is used in paragraph 1604 of the Tariff Act of 1930.

The Customs Court [4] found no dispute that the involved machine was designed for and is specifically used for the packaging of sugar. The court then held that packaging does not constitute manufacture and that "the type of machinery contemplated by Congress to be within the purview of paragraph 1604, *supra*, was to include only those machines used in the manufacture of sugar *per se*." In support of this holding, the court quoted as follows:

Summary of Tariff Information, 1929, on Tariff Act of 1922, Volume 2, Schedule 15, Free List, page 2174: [5]

> DESCRIPTION AND USES.—Sugar-mill machinery includes rolls for crushing cane and extracting the juice, filter presses, tanks, coils, and evaporators, and centrifugal machines for separating the molasses from sugar. In beet-sugar manufacture the crushers used in cane-sugar production are replaced by washers, slicers, and tanks for extracting the sugar with hot water.

---

[4] The Customs Court has incorporated its first opinion, C.D. 2116, by reference into its second opinion, Abstract 64481. We do not distinguish between these two opinions

[5] Reference here is to paragraph 1504 of the Tariff Act of 1922 which paragraph is substantially the same as paragraph 1604 of the Tariff Act of 1930.

Summaries of Tariff Information, Volume 16, Free List, Part 1, 1950, page 73:[6]

This summary covers all types of sugar-manufacturing machinery, which includes equipment used in processes ranging from the preparation of the raw stock to the refining of the sugar. Some of the equipment is standardized and some is specially designed and constructed for particular plants. Among the many kinds of machines used in the manufacture of sugar are cane knives, cane crushers and shredders, cane mills, beet slicers and diffuser tanks, juice heaters, carbonation tanks, filters, evaporators, vacuum pans, centrifugal machines, melting tanks, driers, sifters or graders, and grinding and cubing equipment.

Referring to these quotations, the court further stated:

* * * the type of machinery involved herein was not intended to be covered by the provisions of paragraph 1604 of the Tariff Act of 1930, as claimed herein by plaintiff. The list of the machines contained therein relates to the preparation of raw sugar as distinguished from the refined, finished product. Since the machine involved herein performs a function on the refined sugar, it does not appear to be covered by the provisions of paragraph 1604 of the Tariff Act of 1930.

Accordingly, the Customs Court overruled appellants' protest.

Appellants now urge that packaging is an integral interwoven basic part of the manufacturing process and assert further that the imported machine:

* * * has a definite, vital functional use in the manufacturing process of sugar in that the main purpose behind its acquisition was to increase the output of two-pound bags manufactured by the Savannah refinery from 40 a minute to a possible 120 a minute * * *. Its prime manufacturing objective was to break through an existing bottle-neck in the production process.

*       *       *       *       *       *       *

In other words, the machine in question was manufactured to achieve a definite increase in the production process of the refiner. * * *

Appellee, the Government, urges, on the other hand, that the imported machine is not used in the process of manufacturing sugar but is used subsequent to the manufacture of sugar.

■ Our responsibility in all cases involving the meaning of words in the Tariff Act is to endeavor to ascertain what Congress intended by the use of those words. ■ To do so it is incumbent upon us to assume that Congress attributed to the words their common meaning unless the evidence or some other factor indicates otherwise. Here the congressional intent in the use of the words "machinery for use in the manufacture of sugar" must be resolved. The only word in this phrase which seems to cause some difficulty is the word "manufacture." "Manufacture," according to Funk & Wagnalls New Standard Dictionary (1938), is defined as follows:

---

[6] This summary is of course not indicative of the intent of Congress in 1930.

manufacture, n.  1. The operation of making articles for use by working on or combining material; the production of goods, etc., by industrial processes or art; as, the *manufacture* of lace.

\*        \*        \*        \*        \*        \*        \*

2. Anything made by industrial art or processes; manufactured articles collectively; also, figuratively, the product or result of any process; \* \* \*

Applying this meaning to the word "manufacture" as used in paragraph 1604, there can be no doubt that it does not encompass appellants' sugar weighing and packaging machine.  This machine does not *make* sugar or treat the sugar itself in any manner.  Its only function is to weigh and package the manufactured sugar.

Although we do not believe that appellants contend that the machine makes or treats sugar in any manner, they urge that the machine should be exempt from duty for other reasons.  First they call our attention to *Savannah Sugar Refining Corp. et al.* v. *United States*, 29 Cust. Ct. 88, decided by the United States Customs Court. This case involved an automatic machine known as a Servo weigher designed for weighing raw sugar.  The Collector of Customs classified it as a machine, not specially provided for, under paragraph 372 of the Tariff Act of 1930.  The Customs Court held that it was properly classifiable under paragraph 1604 as "machinery for use in the manufacture of sugar."

How we would have decided that case had it been appealed to this court is a matter of conjecture but nevertheless it is interesting to note the factual basis upon which the Customs Court found that machine to be "machinery for use in the manufacture of sugar."  In reviewing the testimony of the witnesses and in arriving at its conclusion as to the function of the machine, the court stated:

The witness stated that this machine weighs the net amount of the raw sugar entering the refinery and shows the total quantity of material that has been weighed and discharged for processing, thereby furnishing the data necessary to determine the efficiency of the process and the man-hours required to produce the finished product; that the totals shown by this machine are recorded by each shift superintendent so that he knows how well his shift has performed its work.

\*        \*        \*        \*        \*        \*        \*

\* \* \* The machine is so scientifically constructed that it can be adapted to measure volumetrically a jar of sirup in correct proportion to the weight or volume of the amount of raw sugar introduced into the refinery.

\* \* \* The witness explained that the input of raw sugar is the basis for all efficiency determinations and the input is determined by the Servo weigher with great accuracy. \* \* \*

\* \* \* It is not disputed that the Servo weigher enables the refinery to determine the operating efficiency essential to the successful operation of a sugar refinery.

There the machine had an important function in the process of refining the sugar.  Here we find the only function of the machine at bar is to

weigh and package the completely refined sugar which was ready for the consumer before the machine had any function at all.

The Customs Court in the *Savannah Sugar* case, in upholding the importer, cited part of an opinion of our predecessor court in *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T.D. 36124, "As indicative of the liberal treatment accorded to the provision for sugar refining machinery in the tariff act, * * *." The *American Express Co.* case involved certain devices known as "fraises" used to sharpen the knives of beet-cutting machines. The court held these devices to be exempt from duty under paragraph 391 of the tariff act of 1913 which is similar to the paragraph now before us. That part of the *American Express Co.* opinion relied upon in *Savannah Sugar* reads:

* * * If machinery which intervenes directly in the development of the finished product is machinery for use in the manufacture of sugar, then, in our opinion, machines which are necessarily and exclusively or chiefly used to make the operation of such machines commercially practical, efficient, and economical, must likewise be so regarded. To hold otherwise would result in an anomaly which we do not believe it was the intention of Congress to perpetrate· In our opinion the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories. That is to say, any machine constituting a necessary and essential part of the equipment of sugar factories and which is exclusively or chiefly used by them comes within the designation of "machinery for use in the manufacture of sugar."

Appellants urge us to hold for them upon this same liberal basis.

Whether a so-called liberal interpretation of the Act is ever warranted to carry out the intent of Congress is not pertinent to the issue in this case since such an interpretation at least should involve a device that has some relation to the manufacture of sugar per se. This was found to be so both in the *Savannah Sugar* and *American Express Co.* cases. We do not find that to be the situation here.

Appellants also endeavor to find support for their position in some wording of an opinion of the Supreme Court in *Danovitz* v. *United States*, 281 U.S. 389. That case involved the question of whether confiscation of containers, barrels, bottles, corks, labels, cartons, etc., was proper under Section 25, Title II of the National Prohibition Act. The pertinent part of this opinion reads as follows:

* * * By the statute it is "unlawful to have or possess any liquor or property designed for the manufacture of liquor intended for use in violating this chapter or which has been so used, and no property rights shall exist in any such liquor or property." A search warrant may issue "and such liquor, the *containers* [7] thereof, and such property so seized shall be subject to such disposition as the court may make thereof. If it is found that such liquor or property was so unlawfully held or possessed, or had been so unlawfully used, the liquor, and all property designed for the unlawful manufacture of liquor, shall be destroyed,

[7] Petitioners claimed that the Act did not include containers, barrels, etc.

unless the court shall otherwise order." Act of October 28, 1919, c. 85, Title II, § 25, 41 Stat. 305, 315. U.S. Code, Title 27, § 39.

\*     \*     \*     \*     \*     \*     \*

\* \* \* It is obviously correct if the word "manufacture" be taken in the strictest and most exact sense. But the word may be used in a looser way to express the whole process by which an article is made ready for sale on the open market. *P. Lorrilard Co.* v. *Ross,* 183 Ky. 217, 223. As the purpose of the Prohibition Act was to "suppress the entire traffic" condemned by the Act, *United States* v. *Katz,* 271 U.S. 354, 357, *Donnelley* v. *United States,* 276 U.S. 505, 513, it should be liberally construed to the end of this suppression, and so directs. Title II, § 3, of the Act. Code, Title 27, § 12. [Emphasis ours.]

It will be noted that Mr. Justice Holmes stated that the word "manufacture" "*may* be used in a looser way" [emphasis ours], which indicates that such use was not the ordinary one and the looser interpretation was being made in this particular situation because of the purpose of the Prohibition Act which was to "suppress the entire traffic" condemned by the Act. This situation is foreign to the case at bar. Also, it will be noted that the Act itself included "containers" and the loose interpretation of "manufacture" was warranted because the intent of Congress was manifest to the Court. In paragraph 1604 there is no reference to "containers" and we are not considering an act whereby all the provisions should be interpreted to bring about the complete suppression of an "entire traffic" in a certain commodity.

In conclusion, it is our opinion that the machine at bar does not come within the meaning of "machinery for use in the manufacture of sugar" and, therefore, we *affirm* the judgement of the Customs Court.