(C.D. 2559)

Union Sugar Div. Consolidated Foods Corp.

*v.*

United States

United States Customs Court, Second Division

(Decided July 27, 1965)

*Stein & Shostak* (*S. Richard Shostak* and *Marjorie M. Shostak* of counsel) for the plaintiff.

*John W. Douglas,* Assistant Attorney General (*Sheila N. Ziff* and *Harvey A. Isaacs,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Plaintiff, by this action, seeks to recover duties paid on parts of sugar-conditioning and blending machinery under the provisions of paragraph 1604 of the Tariff Act of 1930 as machinery for use in the manufacture of sugar. The merchandise was assessed with duty at the rate of 13¾ per centum ad valorem under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device.

The pertinent portions of the statutes involved herein provide as follows:

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, *supra:*

Articles having as an essential feature an electrical element or device, * * * wholly or in chief value of metal, and not specially provided for:

    \*        \*        \*        \*        \*        \*        \*

    Other (* * *)_____ 13¾% ad val.

Paragraph 1604 of the Tariff Act of 1930:

PAR. 1604. Agricultural implements: * * * machinery for use in the manufacture of sugar, * * * and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including

repair parts : *Provided,* That no article specified by name in Title I shall be free of duty under this paragraph.

The record herein consists of the testimony of two witnesses called on behalf of plaintiff, three exhibits offered by plaintiff, and a stipulation entered into by and between counsel for the respective parties, in which it was agreed the imported merchandise is in chief value of metal and has as an essential feature an electrical element or device.

The first witness called on behalf of plaintiff was Melford A. Woods, factory superintendent of the Betteravia, Calif., refinery of Union Sugar Co. Mr. Woods, well qualified both through experience and by education, having a chemical engineering degree, testified that he was familiar with the imported merchandise which stemmed originally from discussions with the inventor of the unit; that his plant presently utilizes the Weibull conditioner and blender and that he is in charge of its operations and repair; that, to his knowledge, this equipment is used only in the sugar industry; that the entire machine weighs approximately 100 tons and consists of various mechanisms which are specially made and are essential to the operation of the conditioner and blender. A schematic drawing of a Weibull conditioner, essentially the same as the one installed at Betteravia, was received in evidence as plaintiff's exhibit 1, and a photograph taken from the bottom of the equipment was received as plaintiff's exhibit 2. A pictorial chart prepared by the United States Beet Sugar Association, depicting a simplified representation of some of the essential steps in the manufacture of sugar from beets, was received in evidence as plaintiff's exhibit 3.

The witness then summarized the basic procedure in the manufacture of sugar from beets. He stated that the beets are shred into thin slices, immersed in water, the sugar extracted into a sugar solution which is purified by milk of lime and carbon dioxide; that it is then filtered, concentrated by evaporation, refiltered, and boiled down to the point of crystalization; that crystalization is achieved by shocking; that the crystals formed within the mother liquor are boiled to the size generally seen on the market; that the mixture of sugar and mother liquor is then fed to centrifugals, preliminarily dried, screened, and sent to the conditioning unit for further drying, cooling, and blending; that, after the completion of this process, the mixture is sent for final screening.

Mr. Woods then testified that the conditioning equipment removes about 50 percent of the remaining surface moisture and the product is cooled and blended; that the removal of the moisture is necessary to produce a product which will not cake during shipment; that this conditioner is used primarily for sugar shipped in bulk, which constitutes more than 67 percent of his company's production; that bulk shipment is a relatively new development in his field; that the imported unit

blends the sugar by means of a revolving conveyor which, in its initial stage, is sprayed from the bridge and spread over a wide area within the unit; that, in addition, the sugar is removed from the bottom of the unit by a revolving conveyor; that this combination blends the grains into an almost uniform consistency; that, after the grains leave the unit, they are sent to the final screening where the grains are separated into the various sizes required by the trade; that the work done by the Weibull conditioner fits into the process depicted in plaintiff's exhibit 3 between steps No. 11 and 12; that bulk sugar is not completely manufactured before it goes to the conditioning and blending unit.

Mr. Woods then described the process of conditioning used before his company purchased the conditioning and blending unit. The witness testified that, prior thereto, it was necessary to sack the sugar directly from production and allow it to cool in porous bags, then cut open the bags, break up the lumps and ship it to the customers; that the labor costs and the time consumed in that operation is prohibitive with the volume of sugar being supplied to bulk customers; that the blending was accomplished by the mixing of the sugars contained in the various sacks that were cut open.

On cross-examination, Mr. Woods testified that all manufacturers' bulk sugar must have some means of conditioning and blending the sugar before it is shipped in bulk; that some companies use storage tanks through which conditioned air is passed and the sugar allowed to remain there for a period of time until the surface moisture has been dried and the sugar conditioned.

The next witness called on behalf of plaintiff was Sylvester M. Heiner, chief engineer for the Almagamated Sugar Co., of Odgen, Utah. Mr. Heiner testified that he has an electrical engineering degree and has worked for Amalgamated Sugar Co. since 1939, presently being the chief engineer; that he is familiar with the process of manufacturing sugar and is particularly familiar with the Weibull conditioner and blender, having met the inventor, and being in charge of a unit at Amalgamated Sugar company's Nyssa, Oreg., plant; that the machinery involved therein is used to cool, dry, and blend sugar, to make it suitable for bulk sugar customers; that the Weibull unit is not used in any industry other than the sugar industry; that his company uses the Weibull unit to perform the identical functions described by Mr. Woods.

Mr. Heiner then testified that, at his company's plant, after the sugar has completed its conditioning, it goes to a screening operation where 6 or 8 Rotex classifiers are used to classify the sugar to meet specific customer requirements; that tests indicate the moisture contained on the surface of the grains of sugar entering the Weibull unit is approximately 0.035 percent, which is reduced to approximately

0.012 to 0.015 percent; that the sugar is cooled from 36 to 42 degrees centigrade down to 25 to 30 degrees centigrade.

The witness then testified that at the other plants of his company where there are no Weibull units, bulk sugar is always conditioned before it is shipped, and that, at the Twin Falls plant, a stainless steel plate cooler utilizing water and a Pittsburgh electro dryer are used to control the humidity; that, at the Twin Falls plant, all sugar is conditioned for all uses; that, in his experience, bulk sugar is a different commodity from bag sugar and requires some conditioning.

On cross-examination, Mr. Heiner testified that the use of the Weibull conditioner and blender or some other conditioner and blender is essential to the manufacture of bulk sugar; that the final removal of moisture by conditioning is part of the manufacture of sugar.

The language "machinery for use in the manufacture of sugar" contained in paragraph 1604 of the Tariff Act of 1930, and its predecessor provisions in many earlier tariff acts, has been interpreted on many occasions. In *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T.D. 36124, which covered an importation under the Tariff Act of 1913, certain fraises used for sharpening the knives of beet-cutting machines, were held to fall within said statutory language. Pulp driers used to dry the pulp after the sugar had been extracted from the beet similarly fall within said language of the tariff as provided for in the Tariff Act of 1913. *Independent Sugar Co.* v. *United States*, 37 Treas. Dec. 291, T.D. 38221. In the case of *Ernest Du Vivier* v. *United States*, 72 Treas. Dec. 314, T.D. 49162, repairs to certain scales used to weigh beets arriving at the factory were held free of duty under the provisions of paragraph 1604 of the Tariff Act of 1930. In arriving at its conclusion, the court reviewed the decision in the *American Express* case, *supra*, and quoted the following:

In *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T.D. 36124, certain fraises, being the abrading parts of machines which sharpen the knives employed in beet-cutting machines, and used exclusively for that purpose, were held to be entitled to free entry under paragraph 391 of the Tariff Act of 1913 as parts of "machinery for use in the manufacture of sugar." The court said:

* * * If machinery which intervenes directly in the development of the finished product is machinery for use in the manufacture of sugar, then, in our opinion, machines which are necessarily and exclusively or chiefly used to make the operation of such machines commercially practical, efficient, and economical, must likewise be so regarded. To hold otherwise would result in an anomaly which we do not believe it was the intention of Congress to perpetrate. In our opinion the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories. That is to say, any machine constituting a necessary and essential part of the equipment of sugar factories and which is exclusively or chiefly used by them comes within the designation of "machinery for use in the manufacture of sugar."

Certain articles known as Servo duplex weighers which were designed and used for weighing raw sugar entering a refinery were held to fall within the purview of "machinery for use in the manufacture of sugar." *Savannah Sugar Refining Corp. et al.* v. *United States,* 29 Cust. Ct. 88, C.D. 1450.

The most recent pronouncement on this subject matter is a decision involving a machine designed for packaging 2-pound bags of sugar and claimed to be properly entitled to free entry under the provisions of paragraph 1604 of the Tariff Act of 1930 as machinery for use in the manufacture of sugar. *John S. James a/c The Consolidated Packaging Corp.* v. *United States,* 48 CCPA 75, C.A.D. 768. The appellate court, in affirming the decision of this court, which held the packaging machinery involved therein to be dutiable as classified, made the following comment:

The Customs Court found no dispute that the involved machine was designed for and is specifically used for the packaging of sugar. The court then held that packaging does not constitute manufacture and that "the type of machinery contemplated by Congress to be within the purview of paragraph 1604, *supra,* was to include only those machines used in the manufacture of sugar *per se."* In support of this holding, the court quoted as follows:

Summary of Tariff Information, 1929, on Tariff Act of 1922, Volume 2, Schedule 15, Free List, page 2174:

DESCRIPTION AND USES.—Sugar-mill machinery includes rolls for crushing cane and extracting the juice, filter presses, tanks, coils, and evaporators, and centrifugal machines for separating the molasses from sugar. In beet-sugar manufacture the crushers used in cane-sugar production are replaced by washers, slicers, and tanks for extracting the sugar with hot water.

Summaries of Tariff Information, Volume 16, Free List, Part 1, 1950, page 73:

This summary covers all types of sugar-manufacturing machinery, which includes equipment used in processes ranging from the preparation of the raw stock to the refining of the sugar. Some of the equipment is standardized and some is specially designed and constructed for particular plants. Among the many kinds of machines used in the manufacture of sugar are cane knives, cane crushers and shredders, cane mills, beet slicers and diffuser tanks, juice heaters, carbonation tanks, filters, evaporators, vacuum pans, centrifugal machines, melting tanks, driers, sifters or graders, and grinding and cubing equipment.

Referring to the quotations, the court further stated:

* * * the type of machinery involved herein was not intended to be covered by the provisions of paragraph 1604 of the Tariff Act of 1930, as claimed herein by plaintiff. The list of the machines contained therein relates to the preparation of raw sugar as distinguished from the refined, finished product. Since the machine involved herein performs a function on the refined sugar, it does not appear to be covered by the provisions of paragraph 1604 of the Tariff Act of 1930.

The decision then considered the common meaning of the terminology involved therein and stated:

* * * Here the congressional intent in the use of the words "machinery for use in the manufacture of sugar" must be resolved. The only word in this phrase which seems to cause some difficulty is the word "manufacture." "Manufacture," according to Funk & Wagnalls New Standard Dictionary (1938), is defined as follows:

> manufacture, n. 1. The operation of making articles for use by working on or combining material; the production of goods, etc., by industrial processes or art; as, the *manufacture* of lace.
>
> *          *          *          *          *          *          *
>
> 2. Anything made by industrial art or processes; manufactured articles collectively; also, figuratively, the product or result of any process; * * *

Applying this meaning to the word "manufacture" as used in paragraph 1604, there can be no doubt that it does not encompass appellants' sugar weighing and packaging machine. This machine does not *make* sugar or treat the sugar itself in any manner. Its only function is to weigh and package the manufactured sugar. [Italics quoted.]

It is the contention of the defendant herein that the involved blending and conditioning machinery is used for the purpose of "processing" sugar for bulk shipment and is, therefore, not within the purview of the phrase, "machinery for the manufacture of sugar," as required by paragraph 1604, *supra*.

The record in the instant case establishes that the entire machine performs the functions of blending, cooling, and drying or conditioning the refined sugar and that after the sugar leaves the conditioning unit, it is further treated or processed by several screening processes which are utilized for the purpose of separating the sugar into the various sizes required by the trade, from fine for table use to the coarsest product acceptable to the trade for commercial uses. It would also appear from the record that the conditioning machine removes about 50 percent of the remaining surface moisture and reduces the temperature from 36 to 42 degrees centigrade down to 25 to 30 degrees centigrade and that this process or a substitute therefor is necessary for the production of sugar for bulk shipments. Without this process or some conditioning process, the bulk sugar would cake and not be acceptable to the trade.

We are of the opinion that these functions are necessary for the manufacture of sugar and they do not constitute a processing for the purpose of shipment. It is obvious the product shipped must be merchantable and the cooling, blending, and drying of the sugar *per se* is a treating of said sugar which accomplishes this end. In fact, as indicated, *supra*, this step is not the last step in the manufacture or treatment of sugar, since it must be further screened before it becomes sugar in a commercial sense.

It, therefore, clearly appears that the conditioning machine does treat the sugar *per se* and, therefore, falls within the provision for parts of machinery for use in the manufacture of sugar, set forth in paragraph 1604 of the Tariff Act of 1930. The protest is, accordingly, sustained.

Judgment will be entered accordingly.