(C.D. 3175)

Antonio Roig Sucrs. S. en C. *v.* United States

United States Customs Court, Second Division

(Decided October 26, 1967)

*Fiddler, Gonzalez & Rodriguez* (*Salvador E. Casellas* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Morris Braverman,* trial attorney), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Plaintiff by this action seeks a determination by this court of the proper classification of an article described on the invoice as a "Henderson 10 ton fixed electric tower crane with one spreader bar." The collector of customs at San Juan, Puerto Rico, classified said crane under the provisions of paragraph 353, Tariff Act of 1930, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739,[1] as an article having as an essential feature an electrical element or device, other, and assessed duty thereon at 13¾ per centum ad valorem.

Plaintiff contends said crane is of the type used by the cane sugar industry and is, therefore, entitled to entry free of duty under the provisions of paragraph 1604, Tariff Act of 1930.[2]

Mr. Hernan Torrellas, supervising engineer for plaintiff, testified he is a mechanical engineer having received his degree from Cornell University in 1936; that he has been employed by plaintiff approximately 29 years; that he was assistant engineer until 1940 and after his return from Army service, he was reemployed by plaintiff corporation. The witness then testified that he became general manager of the Fellsmere Sugar Producers Association of Fellsmere, Florida, for 12 years and in 1959 returned to plaintiff in his present position.

Plaintiff is a manufacturer of sugar from sugarcane. The witness' experience is not limited solely to Puerto Rico, but also encompasses the two primary sugarcane producing states on the mainland of the United States, Florida and Louisiana. The latter experience was gained while he was employed in Florida by the Fellsmere Sugar

---

[1] Articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs, finished or unfinished, wholly or in chief value of metal and not specially provided for:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Other (* * *) _____ 13¾% ad val.

[2] Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided,* That no article specified by name in Title I shall be free of duty under this paragraph.

Producers Association. Cane sugar is produced in Puerto Rico, Florida, Louisiana, and Hawaii according to the witness. The witness was instrumental in purchasing the crane involved herein which he testified operates as follows:

In a sugar mill they work 24 hours a day. Unfortunately in very few cases you can bring cane from the field at night, and therefore during the day you have to store sugar cane to work at night. The only way you can do that is by stockpiling, and we do that by dumping the sugar cane on the ground, and placing it with the crane—the crane is provided with a set of grabs, and in our case, places the cane under the crane. During the night we take from the stockpile and place it on the conveyor so we can grind it.

The physical characteristics of the crane and its installation were described as follows:

It consists of a central tower. It is about 60 feet high, maybe 10 feet square, and on top of the tower horizontal is mounted a boom, which is a 100 feet long toward the front part of the crane, and maybe 20 feet toward the back side of the crane, which is counter-balanced to offset the weight which might go on the other end.

 * * * * * * *

The crane weighs complete, as assembled now, 65 tons. The foundation extends 65 feet under ground. It consists of 16 concrete piles driven 65 feet into the ground at an angle. I think we have a print if the court is interested. That shows the size of the foundation required to hold the crane.

It further appears that the imported crane weighs 52 tons and costs approximately $42,000. The foundation work to support the crane costs approximately $20,000.

The imported crane is operated by electric power, but the importer had a choice of diesel or steam power as well as electricity. Mr. Torrellas of his own knowledge knew that 75 percent of the sugar producers in Puerto Rico have cranes which are similar and which are used in the handling of sugarcane. When he was in Florida, at the time he was employed by the Fellsmere Sugar Producers Association, there were only 3 can sugar mills and 2 of them had cranes while all 15 mills he visited in Louisiana had similar cranes. To the knowledge of the witness, the crane such as is involved herein is not used in any other industry than the cane sugar industry.

In the condition as imported and without further evidence to the contrary, the involved cranes have not been shown to be other than articles having as an essential feature an electrical element or device which are dutiable under the provisions of paragraph 353, *supra*, as classified, unless it has been established that such cranes fall within the purview of agricultural implements or machinery for the manu-

facture of sugar as provided for in paragraph 1604, *supra*. At the outset, it is to be noted that the proviso contained in paragraph 1604, *supra*, limits the application of such paragraph to articles which are not specified by name in title I—The Dutiable List of the Tariff Act of 1930. Merchandise having been classified under a general class of articles is not for tariff purposes specified by name and, therefore, may, if the record so establishes, be entitled to entry free of duty under the provisions of paragraph 1604, *supra*. *United States* v. *Compania Azucarera Del Camuy, Inc.*, 45 CCPA 4, C.A.D. 664.

Plaintiff appears to rely alternatively upon two distinct provisions of paragraph 1604, *supra*, agricultural implements and machinery for the manufacture of sugar. There have been numerous judicial interpretations of the provision for agricultural implements over the years and succinctly stated this provision should be given a broad and liberal interpretation since the intent of Congress, in enacting it and its predecessor, was to encourage agriculture by affording free importation of merchandise used in connection therewith. *Wilbur-Ellis Co.* v. *United States*, 26 CCPA 403, C.A.D. 47; *Inter-Maritime Forwarding Co., Inc.* v. *United States*, 45 CCPA 125, C.A.D. 685.

To sustain a claim for free entry under this provision, it is incumbent upon a plaintiff to establish the general use of the kind or class of article by users as a whole and not of the particular importation. *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835. Ordinarily, in order to establish chief use, the evidence of use must relate to the United States generally and not a limited portion thereof. *United States* v. *F. W. Woolworth Co.*, 23 CCPA 98, T.D. 47765. However, where the use of the article is limited to certain sections of the country, testimony by a competent witness as to use in those areas is sufficient. *Catton, Neill & Co. (Ltd.)* v. *United States*, 11 Ct. Cust. Appls. 278, T.D. 39084; *United States* v. *S. S. Perry*, 25 Ct. Cust. Appls. 282, T.D. 49395; *United States* v. *Gardel Industries*, 33 CCPA 118, C.A.D. 325; *Richard L. Jones* v. *United States*, 58 Cust. Ct. 165, C.D. 2920.

The uncontradicted evidence herein establishes that sugarcane is produced in two states on the mainland of the United States, Florida and Louisiana, and in the State of Hawaii as well as in the Commonwealth of Puerto Rico. The record establishes to our satisfaction that the chief use of cranes of the class or kind in question is generally by sugarcane mills.

While the court may take judicial notice of the fact that the production of sugarcane is an agricultural pursuit, it is not clear that the imported crane falls within the purview of the provision for agricultural implements. The term "agricultural implements"

was defined in the case of *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472, which involved a predecessor provision contained in the Tariff Act of 1913. The court therein, after reviewing a number of dictionary definitions, concluded that the term "agricultural implements" embraced articles "such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment)." This definition was further amplified in *United States* v. *Tower*, 6 Ct. Cust. Appls. 562, T.D. 36199, wherein the court held that an agricultural implement serves some purpose in the production of food from the soil or in the raising of domestic animals. The imported crane does not fall within either definition as set forth, *supra*, inasmuch as the function of the imported merchandise is to handle the sugarcane after it is grown, cut, and transported to the sugar factory. The use is not by the farmer or on the farm but by the sugar processor at the sugar factory.

While cranes used on farms for the loading of sugarcane into carts and sugarcane slings used for the loading of cane on a farm have been held to be agricultural implements, the involved cranes do not fall within the same category since they are not used by the farmer on the farm for agricultural purposes. See *In the Matter of Jose Romaguera*, 39 Treas. Dec. 25, T.D. 38592; *United States* v. *Compania Azucarera Del Camuy, Inc.*, *supra*.

The question of whether such merchandise as is involved herein constitutes machinery for the manufacture of sugar must next be considered. The appellate court in *John S. James a/c The Consolidated Packaging Corp.* v. *United States*, 48 CCPA 75, C.A.D. 768, specifically determined the meaning of the phraseology under consideration. The court therein held certain machinery which packaged and weighed sugar was not entitled to entry free of duty under said provision of paragraph 1604, *supra*. The court therein reviewed the case of *Savannah Sugar Refining Corp. et al.* v. *United States*, 29 Cust. Ct. 88, C.D. 1450, which held an automatic machine known as a servo weigher which weighs raw sugar fell within that terminology and the case of *United States* v. *American Express Co.*, 6 Ct. Cust. Appls. 494, T.D. 36124, which held certain devices for sharpening knives of beet cutting machines were sugar machinery within said language. The court in the *James* case, *supra*, in arriving at its decision quoted from the *American Express* case, *supra*, but relied upon the decision of this court in the *Savannah* case, *supra*, wherein the following was stated:

* * * If machinery which intervenes directly in the development of the finished product is machinery for use in the manufacture of sugar, then, in our opinion, machines which are necessarily and exclusively or chiefly used to make the operation of such machines

commercially practical, efficient, and economical, must likewise be so regarded. To hold otherwise would result in an anomaly which we do not believe it was the intention of Congress to perpetrate. In our opinion the obvious intent of the provision was to favor the sugar-making industry and give the benefit of free entry at least to all machinery peculiar to and chiefly or exclusively used by sugar factories. That is to say, any machine constituting a necessary and essential part of the equipment of sugar factories and which is exclusively or chiefly used by them comes within the designation of "machinery for use in the manufacture of sugar."

Appellants urge us to hold for them upon this same liberal basis.

Whether a so-called liberal interpretation of the Act is even warranted to carry out the intent of Congress is not pertinent to the issue in this case since such an interpretation at least should involve a device that has some relation to the manufacture of sugar per se. This was found to be so both in the *Savannah Sugar* and *American Express Co.* cases. We do not find that to be the situation here.

We, of course, are aware of the fact that sugarcane must in some manner or other be made available for processing into sugar. However, a crane, even though solely used for the purpose described herein, is not the kind or class of machinery intended to be covered by the language "machinery for use in the manufacture of sugar" as provided in paragraph 1604, *supra*. The Court of Customs and Patent Appeals in the *James* case, *supra*, in reviewing congressional intent, made the following observations:

The Customs Court found no dispute that the involved machine was designed for and is specifically used for the packaging of sugar. The court then held that packaging does not constitute manufacture and that "the type of machinery contemplated by Congress to be within the purview of paragraph 1604, *supra*, was to include only those machines used in the manufacture of sugar per se." In support of this holding, the court quoted as follows:

Summary of Tariff Information 1929, on Tariff Act of 1922, Volume 2, Schedule 15, Free List, page 2174:

> DESCRIPTION AND USES.—Sugar-mill machinery includes rolls for crushing cane and extracting the juice, filter presses, tanks, coils, and evaporators, and centrifugal machines for separating the molasses from sugar. In beet-sugar manufacture the crushers used in cane-sugar production are replaced by washers, slicers, and tanks for extracting the sugar with hot water.

Summaries of Tariff Information, Volume 16, Free List, Part 1, 1950, page 73:

> This summary covers all types of sugar-manufacturing machinery, which includes equipment used in processes ranging from the preparation of the raw stock to the refining of the sugar.

Some of the equipment is standardized and some is specially designed and constructed for particular plants. Among the many kinds of machines used in the manufacture of sugar are cane knives, cane crushers and shredders, cane mills, beet slicers and diffuser tanks, juice heaters, carbonation tanks, filters, evaporators, vacuum pans, centrifugal machines, melting tanks, driers, sifters or graders, and grinding and cubing equipment.

\* \* \* \* \* \* \*

\* \* \* Here the congressional intent in the use of the words "machinery for use in the manufacture of sugar" must be resolved. The only word in this phrase which seems to cause some difficulty is the word "manufacture." "Manufacture," according to Funk & Wagnalls New Standard Dictionary (1938), is defined as follows:

> manufacture, n. 1. The operation of making articles for use by working on or combining material; the production of goods, etc., by industrial processes or art; as, the *manufacture* of lace.

\* \* \* \* \* \* \*

> 2. Anything made by industrial art or processes; manufactured articles collectively; also, figuratively, the product or result of any process; \* \* \*

Applying this meaning to the word "manufacture" as used in paragraph 1604, there can be no doubt that it does not encompass appellants' sugar weighing and packaging machine. This machine does not *make* sugar or treat the sugar itself in any manner. Its only function is to weigh and package the manufactured sugar.

In the case at bar, the same reasoning is applicable in that "This machine does not *make* sugar or treat sugar itself in any manner." Its sole function is to place sugarcane from the stockpile on to a conveyor. This function has no correlation to the type or class of machinery set forth, *supra*.

Accordingly, we are of the opinion that said crane is properly subject to classification under the provisions of paragraph 353, *supra*, as classified. The protest is, therefore, overruled.

Judgment will be entered accordingly.